| | |
|---|---|
| 1 | |
| 2 | |

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| DARRELL RAY BAILEY, | ) | |
| | ) | |
| Petitioner, | ) | No. CV 06-0019-PHX-ROS (CRP) |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| D. SCHRIRO, et. al., | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

Darrell Ray Bailey ("Petitioner"), presently an inmate at the Arizona State Prison Complex in Yuma, filed a Petition for Writ of Habeas Corpus ("Habeas Petition") on January 3, 2006. (Doc 1). Petitioner presents four claims in his Habeas Petition. He argues (1) his sentence was improperly enhanced because aggravating factors were not presented to a jury as required by *Blakely v. Washington*; (2) his counsel failed to object to the use of an inaccurate presentence report, and therefore provided ineffective assistance; (3) he was denied due process when his trial judge did not ask him if he had read and understood the presentence report; and (4) his counsel failed to object to improper sentencing, and therefore provided ineffective assistance. Respondents oppose the Habeas Petition, arguing that all four of Petitioner's claims are procedurally defaulted. (Doc. 10). It is the Report and Recommendation of this Court that the District Judge, after her independent review and analysis, deny the Habeas Petition because it is untimely. If the District Judge finds the

1  Habeas Petition is timely, it is the recommendation of this Court that the Habeas Petition be
2  denied because Petitioner's second, third and fourth claims are procedurally defaulted, and
3  Petitioner's first claim fails on the merits because *Blakely* does not apply retroactively.

**I. FACTUAL AND PROCEDURAL HISTORY**

**A. Direct Review**

On April 5, 1996, Petitioner was indicted in Arizona state court on two criminal arising from two separate incidents that occurred on March 28, 1996. In those incidents, Petitioner allegedly threatened the use of a deadly weapon in order to take property from others. (Doc 10, Exhibit A, p 1-2). On August 8, 1996 Petitioner was indicted on seven criminal counts for armed robberies that occurred on March 17, March 21, March 25, and March 26, 1996 respectively, for kidnapping arising from the March 21 incident, and for attempted armed robbery on March 28, 1996. (Doc 10, Exhibit B, p 1-6).

On March 5, 1997, Petitioner entered into a plea agreement with the State. (Doc 10, Exhibit H). Regarding the first indictment, Petitioner agreed to plead guilty to both counts for a sentence of ten years for each count, to be served concurrently with each other but consecutively to the sentences imposed for the charges in the second indictment. (Doc 10, Exhibit H, p 1). In exchange for Petitioner's guilty plea, the State dismissed the allegation that Petitioner used a deadly weapon. (Doc 10, Exhibit H, p 1). Regarding the second indictment, Petitioner agreed to plead guilty to the four counts of armed robbery for a sentence of five years for both Counts One and Two, to be served concurrently with each other but consecutively to the other sentences, and for a sentence of six years for both Counts Four and Five, to be served concurrently with each other but consecutively to the other sentences. (Doc 10, Exhibit H, p 3). The State dismissed Counts Three, Six and Seven, and again dismissed allegations of a deadly weapon. (Doc 10, Exhibit H, p 3).

After entering into the plea but prior to the sentencing hearing, Petitioner moved to withdraw his plea, claiming that he previously misunderstood the plea agreement. (Doc 10, Exhibit J, p 1). Judge Louis Araneta denied Petitioner's motion to withdraw his plea. (Doc 10, Exhibit K, p 1). In Petitioner's sentencing hearing on May 9, 1997, Judge Araneta

sentenced Petitioner to ten years for the charges in the first indictment and for the second indictment she sentenced Petitioner to five years for Counts One and Two and six years for Counts Four and Five. Petitioner was sentenced to a total of twenty-one years. (Doc 10, Exhibit JJ, internally attached Exhibit C, R.T. 05/07/97). Petitioner's sentence for Counts One and Two in the first indictment equated to the maximum sentence. (Doc 10, Exhibit H, p 1). Petitioner's sentence for Counts One and Two of the second indictment equated to the presumptive sentence, while Petitioner's sentence for Counts Four and Five of that indictment was above the presumptive sentence but below the maximum sentence. (Doc 10, Exhibit H, p 3).

Though Petitioner waived his right to direct review of all six counts by pleading guilty, under Arizona law he was still entitled to file an "of right" appeal for post-conviction relief. On May 27, 1997, Petitioner filed a notice of post-conviction relief pursuant to Rule 32.4 of the Arizona Rules of Criminal Procedure. (Doc 10, Exhibit O). Petitioner was appointed counsel on June 5, 1997. (Doc 10, Exhibit P). On December 9, 1997, Petitioner's appointed counsel submitted a motion requesting that Petitioner be granted an extension of time and be allowed to proceed pro se. (Doc 10, Exhibit S). The motion detailed that appointed counsel could find no tenable issue upon which to base Petitioner's appeal for post-conviction relief. (Doc 10, Exhibit S, p 1). On February 11, 1998 Petitioner submitted his *pro se* post-conviction relief appeal, arguing that he was sentenced pursuant to a deadly weapon statute despite his plea agreement detailing that the deadly weapon allegations would be dismissed. (Doc 10, Exhibit W, p 1). The court dismissed Petitioner's pro se post-conviction relief appeal on January 4, 2000, noting that Petitioner had no colorable claim for relief. (Doc 10, Exhibit DD, p 1). Under Arizona law, Petitioner had thirty days to petition the Arizona Court of Appeals to review the trial court's dismissal. Ariz. R. Crim. P. 32.9. Petitioner never filed such a petition and his opportunity to file that petition expired on February 3, 2000. On November 2, 2000, Petitioner made an inquiry for the status of his "unanswered Petition for Review." (Doc 10, Exhibit EE). Shortly thereafter, the State filed a motion for ruling on the appeal. (Doc 10, Exhibit FF). Accordingly, on February 8, 2001

1 the trial court filed a minute entry noting its January 4, 2000 decision. (Doc 10, Exhibit GG, p 1).

**B. Collateral Review**

On August 17, 2003, Petitioner submitted a document to the trial court entitled "Motion for Leave to File Delayed Appeal." (Doc 10, Exhibit JJ). The motion cited Rule 32 of the Arizona Rules of Criminal Procedure, reiterated that Petitioner's sentence was improperly enhanced, and introduced new claims of ineffective assistance of counsel. (Doc 10, Exhibit JJ). In response, the State argued Petitioner's Motion for Leave should be construed as a second petition for post-conviction relief, as the motion cited Rule 32 and introduced new arguments for relief. (Doc 10, Exhibit KK, p 1-2). Judge Araneta agreed with the State and found that Petitioner's motion was a second petition for post-conviction relief. (Doc 10, Exhibit LL, p 1). While Petitioner contends that he told his attorney he objected to the construction of his motion as a second petition for post-conviction relief, (Doc 13, p 3), there is no formal objection to the construction on record. On March 9, 2004, the trial court dismissed Petitioner's second petition for Post-Conviction Relief, stating that his claim of ineffective assistance of counsel was precluded because it should have been raised in his prior petition. The Court also held Petitioner's claim of improper sentence enhancement was precluded because it was raised in the first petition and was denied. (Doc 10, Exhibit PP, p 1).

On October 13, 2004, Petitioner submitted a Petition for Review to the Arizona Court of Appeals. (Doc 10, Exhibit UU). In his Petition for Review, Petitioner cited the recent decision in *Blakely v. Washington*, and asked whether that ruling was applicable to his case. (Doc 10, Exhibit UU, p 2), 542 U.S. 296 (2004). On July 21, 2005, the Arizona Court of Appeals denied review of Petitioner's second petition for post-conviction relief. (Doc 10, Exhibit AAA, p 2). Under Arizona Rule of Criminal Procedure 31.19, Petitioner had 30 days to petition the Arizona Supreme Court to review the appellate court's denial of his second post-conviction relief appeal. Petitioner never made the request and his time for filing such a request expired on August 22, 2005.

**C. Federal Appeal**

Petitioner filed the pending Habeas Petition with this Court on January 3, 2006. (Doc 1).

**II. DISCUSSION**

**A. Timeliness**

**1. Habeas Petition Statute of Limitations**

Under the Anti-terrorism and Effected Death Penalty Act of 1996 ("AEDPA"), a state prisoner must apply for a writ of habeas corpus within a one-year period of limitation following the final judgement of the State court. 28 U.S.C. § 2244(d)(1). The limitation period begins to run from the latest of the following dates: (1) the date on which the judgement became final by the conclusion of direct review or the expiration of time for seeking such review; (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

Of the four possible triggering dates for the AEDPA's one-year period of limitation, only the first is relevant to the present action. Though Petitioner waived his right to a direct appeal by pleading guilty to all six counts of armed robbery, he utilized his Rule 32 of-right appeal when he filed for post-conviction relief. This of-right appeal was part of Petitioner's direct review for the purposes of determining when the AEDPA's one-year statute of limitations is triggered. *Summers v. Schriro*, 481 F.3d 710, 716-17 (9th Cir.2007). According to the Ninth Circuit, the period of limitations does not begin to run until the conclusion of the Rule 32 of-right proceeding and review of that proceeding, or until the expiration of the time for seeking such proceeding or review. *Summers*, 481 F.3d at 711.

Since Petitioner's Motion for Leave to File Delayed Appeal filed in August 2003 was

1 construed as a second petition for post-conviction relief, Petitioner's of-right Rule 32 appeal 2 ended when his right to appeal the trial court's denial of his appeal expired. The trial court 3 denied Petitioner's first post-conviction petition, his of-right appeal, on January 4, 2000. His 4 right to appeal the trial court's denial expired 30 days later, on February 3, 2000. Ariz. R. 5 Crim. Proc. 32.9(c). Accordingly, Petitioner's direct review ended on February 3, 2000. 6 The AEDPA's limitations period was triggered the following day on February 4, 2000. 7 Petitioner's inquiry into the status of his of-right appeal in November 2000, after the trial 8 court had dismissed the appeal, does not affect the date petitioner's judgment because final. 9 Petitioner never appealed the trial court's decision on his of-right appeal, he did not argue 10 he lacked notice of the trial court's decision, nor was he ever granted leave to file a late 11 appeal. Thus, the AEDPA's statute of limitations was triggered on February 4, 2000.

12 Absent any statutory or equitable tolling periods, Petitioner's right to file a federal 13 Habeas Petition expired on February 4, 2001. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 14 (9th Cir.2001) (calculating the one-year AEDPA period of limitations using the "anniversary 15 method" of Rule 6(a) of the Federal Rules of Civil Procedure). Petitioner did not file his 16 Habeas Petition until January 3, 2006, well after the AEDPA one-year period of limitations 17 expired. Petitioner does not argue and this Court does not find that Petitioner is entitled to 18 any equitable toling. Thus, Petitioner's Habeas Petition is untimely unless statutory tolling 19 applies and results in a tolling of the limitations period for a sufficient length of time to bring 20 the Habeas Petition within the one-year time limit.

21 **2. Statutory Tolling**

22 The AEDPA's one-year period of limitations may be subject to statutory tolling. The 23 one-year period of limitations is statutorily tolled during any properly filed state post- 24 conviction review or other collateral review relating to a pertinent judgement. 28 U.S.C. § 25 2244(d)(2). The collateral review, however, will only toll the AEDPA's statute of limitations 26 if that limitations period has not yet expired. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th 27 Cir.2001). In other words, state collateral review cannot extend the AEDPA's one-year 28 period of limitations when that year has already fully passed.

In the case pending before this Court, the AEDPA's statute of limitations began to run on February 4, 2000, the day after his direct review expired. That limitations period ran a full year and expired on February 4, 2001. Petitioner did not file his second petition for post-conviction relief until August 2003. This was over two years after the AEDPA's statute of limitations expired for Petitioner. Based on the Ninth Circuit's holding in *Jiminez*, Petitioner is not entitled to any retroactive tolling of the AEDPA one-year period of limitations. Thus, Petitioner's Habeas Petition is untimely and should be dismissed.

If the District Judge, after her independent review and analysis, determines the Habeas Petition is timely, then it should be dismissed because it is procedurally defaulted and *Blakely* is not retroactive.

**B. Procedural Default**

    **1. Positions of the Parties**

Respondents argue that all four of Petitioner's claims are procedurally defaulted and require dismissal. In particular, Respondents assert that because Petitioner raised claims in his second petition for post-conviction relief that were precluded, there was not a fair presentation of his federal claims to the Arizona Court of Appeals. In Petitioner's reply, he contends his previous counsel led him to believe he exhausted all available state remedies.

    **2. Legal Standard - Exhaustion**

Petitioners must exhaust their Habeas claims in state court before they may receive federal Habeas relief. 28 U.S.C. § 2254(b)(A). A petitioner has not exhausted his claim in the State courts "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Because State courts are obliged to enforce Federal law, comity "dictates that when a prisoner alleges that his continued confinement from a state court conviction violates federal law, the [S]tate courts should have the first opportunity to review this claim and provide any necessary relief." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). The exhaustion doctrine thus requires that petitioners fairly present their federal claims to State courts, and that petitioners invoke "one complete round of the State's established appellate review process" in order to give State

courts an opportunity to address the federal claims. *Id.* at 845. A petitioner satisfies the requirement of exhaustion by (1) fairly presenting his federal claim to the highest state court or (2) demonstrating that there is no state remedy available. *See Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir.1996).

### 3. Legal Standard - Procedural Default

If a petitioner has technically exhausted his federal claim in State court because no available state remedy remains, but Petitioner failed to present that claim in State court, Petitioner has technically exhausted but procedurally defaulted that claim. Federal claims that are procedurally defaulted because Petitioner failed to follow a state's procedural rules cannot be heard by the federal courts in a habeas petition. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Cook v. Schriro*, 516 F.3d 802, 827 (9th Cir.2008) (quoting *Coleman*, 501 U.S. at 732).

The Arizona Rules of Criminal Procedure dictate that a petitioner is precluded from relief under Rule 32 if his claim has been finally adjudicated on the merits on appeal or in any previous collateral proceeding, or if his claim has been waived at trial, on appeal, or in any previous collateral proceeding. Ariz. R. Crim. P. 32.2(a)(2), (3). A Rule 32 claim is not precluded if, subsequent to the conclusion of a collateral proceeding, there has been a significant change in the law that, if determined to apply to a petitioner's case, would probably overturn the petitioner's sentence. Ariz. R. Crim P. 32.1(g), 32.2(b). It follows that if a petitioner's claim for relief is precluded for procedural reasons in state court, then the petitioner's claim for habeas relief in federal court is procedurally defaulted.

### 4. Procedural Default as It Applies to Petitioner's Second, Third and Fourth Claims

In the case pending before this Court, Petitioner technically exhausted but procedurally defaulted his second, third, and fourth claims before State court. Petitioner did not raise these claims in his first petition for post-conviction relief, and accordingly these

1. claims were precluded in his second petition for post-conviction relief, pursuant to Arizona
2. Rule of Criminal Procedure 32.2(a)(3).  Because Petitioner did not raise these claims in his
3. first petition for post-conviction relief, they were considered waived and thus precluded in
4. his subsequent state post-conviction relief appeal. Petitioner's second, third and fourth claims
5. are technically exhausted because no available state remedy remains for Petitioner.
6. However, because Petitioner's second petition for post-conviction relief was dismissed due
7. to a procedural bar, the state courts never received a fair presentation of these claims.  For
8. this reason, Petitioner's second, third and fourth claims are procedurally defaulted and may
9. not be heard in this Court, absent a showing of cause and prejudice.  Petitioner does not
10. argue and this Court does not find any cause or prejudice in Petitioner's failure to present
11. these claims to the state courts.

12. Respondents contend that Petitioner's first claim for relief is procedurally defaulted
13. as well, because this claim was dismissed under rules of preclusion in Petitioner's second
14. petition for post-conviction relief.  In appealing the dismissal of his second petition for post-
15. conviction relief, however, Petitioner argued *Blakely* implications.  Because *Blakely* was not
16. decided until June, 2004, Petitioner could not have originally raised this issue in his first
17. post-conviction relief appeal. The rules of preclusion do not apply to claims of relief based
18. on a significant change of law that if applied would overturn Petitioner's sentence. Ariz. R.
19. Crim. P. 32.1(g).  Thus, Petitioner's first claim, implicating *Blakely*, should not have been
20. dismissed as precluded. Accordingly, this Court finds that Petitioner's first claim for relief
21. is not procedurally defaulted, and its merits are addressed in the below section.

22. **C. Merits of Petitioner's Remaining Claim**

23. **1. Legal Standard**

24. An application for a writ of habeas corpus will not be granted by a federal court unless
25. the previous State court proceedings "(1) resulted in a decision that was contrary to, or
26. involved an unreasonable application of, clearly established Federal law, as determined by
27. the Supreme Court of the United States; or (2) resulted in a decision that was based on an
28. unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254.

- 9 -

1  A state court's application of Federal law is not unreasonable simply because a federal
2  habeas court concludes in its independent judgement that the interpretation of federal law
3  was incorrect; rather, a federal habeas court must conclude that the State court's decision was
4  objectively unreasonable. *Woodford v. Viscotti*, 537 U.S. 19, 24-25 (2002).  In other words,
5  "an unreasonable application of Federal law is different from an incorrect application of
6  Federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). In reviewing a petitioner's
7  federal Habeas Petition on the merits, state-court decisions must be given deference, and
8  "readiness to attribute error is inconsistent with the presumption that state courts know and
9  follow the law." *Holland v. Jackson*, 542 U.S. 649, 655 (2004) (quoting *Woodford*, 537 U.S.
10 at 24).

**2. Petitioner's *Blakely* Claim**

**a. Position of the Parties**

13 Petitioner claims that his sentence was improperly enhanced in violation of *Blakely*
14 *v. Washington*, 542 U.S. 296 (2004).  Petitioner argues that Judge Araneta considered two
15 aggravating factors in sentencing Petitioner above the presumptive amount, and these factors
16 were not presented to a jury and proved beyond a reasonable doubt.  Respondents do not
17 address the merits of Petitioner's *Blakely* claim.

**b. Legal Standard for *Blakely-Apprendi* Issue**

19 In 2000, the Supreme Court held that in sentencing an individual pursuant to a
20 criminal conviction, any aggravating factor other than a prior conviction used to increase the
21 penalty for a crime above the statutory maximum must be submitted to a jury and proved
22 beyond a reasonable doubt. *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000).  Four years
23 later the Supreme Court clarified the *Apprendi* decision, holding that the "statutory
24 maximum" did not refer to the maximum sentence proscribed by the legislature. *Blakely v.
25 Washington*, 542 U.S. 296, 303 (2004). Rather, the Court held that the "statutory maximum"
26 referred to the presumptive sentence determined by the facts admitted by the defendant or
27 found by the jury. *Id.*  The "statutory maximum" discussed in the *Apprendi* decision refers
28 not to "the maximum sentence a judge may impose after finding additional facts, but [to] the

1    maximum he may impose without any additional findings." *Id.* at 304.

2    Courts have held that *Blakely* does not apply retroactively.  New procedural rules do
3    not generally apply retroactively unless they are "'watershed rules of criminal procedure'
4    implicating the fundamental fairness and accuracy of the criminal proceeding." *Schardt v.*
5    *Payne*, 414 F.3d 1025, 1036 (9th Cir.2005) (quoting *Saffle v. Parks,* 494 U.S. 484 (1990)).
6    Because *Blakely* did not introduce a watershed rule of criminal procedure, it does not apply
7    retroactively on collateral review to a decision made final before  *Blakely* was issued. *Id.*

8    The decision in *Blakely* is also not applicable to a defendant who agrees to a sentence
9    in his plea agreement, and is then sentenced to the terms contained in that agreement.   In
10   fact, "when a defendant pleads guilty, the State is free to seek judicial sentence enhancements
11   so long as the defendant either stipulates to the relevant facts or consents to judicial fact-
12   finding." *Blakely*, 542 U.S. at 310.

13   **c. Petitioner's *Apprendi-Blakely* Claim**

14   Petitioner contends Judge Araneta enhanced his sentence after considering two
15   aggravating factors that were not presented to a jury.  Specifically, Petitioner argues that the
16   Judge considered financial gain and emotional harm.  Petitioner's sentences for Counts One
17   and Two in the first Indictment  and for Counts Four and Five in the second Indictment were
18   above the presumptive maximum sentence.  If applicable, *Blakely* would mandate that the
19   aggravating factors Judge Araneta considered in order to enhance Petitioner's sentence
20   should have been presented to a jury and proved beyond a reasonable doubt.

21   *Blakely*, however, is not applicable to the case pending before this Court for two
22   reasons.  First, the decision on Petitioner's first petition for post-conviction relief was made
23   final with the state court's dismissal of his Rule 32 appeal on January 4, 2000. As *Blakely*
24   was not decided until June 2004, Petitioner has no claim for relief under *Blakely* because
25   *Blakely* does not apply retroactively on collateral review to a decision made final before
26   *Blakely* was decided.  In addition, *Blakely* is not applicable to Petitioner's present Habeas
27   Petition because Petitioner entered into a plea agreement with the State, and Petitioner was
28   sentenced to the time agreed upon in the plea agreement.  This Court does not find that the

- 11 -

State court proceeding resulted in an unreasonable application of clearly established federal law. As *Blakely* is not applicable to Petitioner's case, Petitioner's *Blakely* claim should be denied on the merits.

### III. RECOMMENDATION

Based on the foregoing, the Magistrate Judge recommends that the District Court, after its independent review and analysis, enter an order DISMISSING the Petition for Writ of Habeas Corpus.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within ten days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **cv-06-0019-ROS**.

DATED this 1st day of August, 2008.

_____
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE